UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN N.S. CHEUNG, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. C04-2050RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## **I.  INTRODUCTION**

This matter comes before the Court on defendant's Second Motion for Partial Summary Judgment asking the Court to find that there is a nexus between plaintiff's accounts and the taxpayer as a matter of law, and on plaintiff's Motion for Summary Judgment asking the Court to find that there is no nexus between its accounts and the taxpayer as a matter of law.  (Dkts. #52 and #54). Defendant argues that the taxpayer effectively controlled plaintiff's accounts at Bank of America and Smith Barney, and therefore, the IRS properly levied on those accounts as nominee accounts of the taxpayer.

Plaintiff responds that defendant's evidence is "little more than improper and unreasonable inferences and inadmissible hearsay," and therefore, defendant has failed to demonstrate a nexus between its accounts and the taxpayer.  (Dkt. #67).  On its own motion for summary judgment,

ORDER
PAGE - 1

plaintiff argues that defendant may only use evidence it had in its possession at the time of its levies to demonstrate a sufficient nexus between plaintiff's accounts and the taxpayer, and asserts that it cannot so demonstrate. Therefore, plaintiff asks for summary judgment in its favor, and asks that the Court order defendant to return the monies it has levied from plaintiff's accounts.

For the reasons set forth below, the Court finds that genuine issues of material fact have been raised with respect to whether there is a nexus between plaintiff's accounts and the taxpayer, and therefore, summary judgment is not appropriate for either party.

## II. DISCUSSION

### A. Background

Plaintiff, Steven N.S. Cheung, Inc., is a Washington State corporation. It is to be distinguished from the individual, Steven N.S. Cheung ("Dr. Cheung"), who is a citizen of the United States, co-defendant in a concurrent criminal action being litigated in this Court, and the taxpayer whose tax deficiency was satisfied by the levy at issue in this case.

In late January of 2003, the United States issued a jeopardy assessment against Dr. Cheung for income tax liability for the calendar year 1993. Plaintiff alleges that the United States assessed $1,466,918.00 upon Mr. Cheung. Defendant then levied property of plaintiff, on the grounds that plaintiff was the nominee of Dr. Cheung.

After defendant had levied funds from accounts at Bank of America and Salomon Smith Barney ("Smith Barney"), plaintiff issued a check as a final payoff for Dr. Cheung's tax debt. Plaintiff then filed a request for an administrative hearing for the unlawful seizure of its property. However, the United States denied that request, asserting that Cheung, Inc. had no right to any administrative hearings. As a result, plaintiff filed this wrongful levy suit.

Defendant initially moved for partial summary judgment on the basis that 26 U.S.C. § 7426, the statute under which the instant action was brought, does not permit a third party to seek recovery of funds that were voluntarily paid to the IRS in anticipation of a levy. Defendant asserted

that plaintiff's last payment in satisfaction of the outstanding tax liability of Dr. Cheung was voluntary because no levy for that payment had been issued at the time it was made. The Court rejected that argument, and denied summary judgment on the voluntary payment issue.[1] The instant motions for summary judgment followed.

**B. Motions to Strike**

Plaintiff has moved to strike certain evidence presented in support of defendant's Second Motion for Partial Summary Judgment. The Court addresses each request in turn.

*1. Imperial West Signature Cards*

Plaintiff first moves to strike the signature cards obtained from Imperial West Bank in Hong Kong. (Dkt. #67 at 5). The Court finds this request moot, as it has already precluded that evidence based on defendant's failure to obtain permission from Hong Kong authorities to use it. (*See* Dkt. #76).

*2. Art Circo Statements to Bank Employees*

Plaintiff next moves to strike any second-hand statements about Mr. Circo's alleged conversations with bank employees as impermissible hearsay. (Dkt. #67 at 7). Defendant argues that such statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D), because they are statements by plaintiff's agent concerning a matter within the scope of his employment.

There appears to be no real dispute that Mr. Circo is an agent of plaintiff. He is employed by plaintiff and by West Coast Land Investments, Inc., a wholly-owned subsidiary of plaintiff, to manage various real estate properties held by the two companies, and he is the corporate secretary of plaintiff. Plaintiff asserts that Mr. Circo was wiring money at the bank to make a payment on a loan held by plaintiff. Thus, it appears that Mr. Circo was acting within the scope of his employment

---

[1] At the same time, the Court granted defendant's motion for summary judgment with respect to payments seized from the personal accounts of the taxpayer. Plaintiff had conceded that it did not have standing to challenge those amounts. The Court is currently considering defendant's Motion for Reconsideration on the voluntary payment issue.

ORDER
PAGE - 3

while conducting the money transfer, and therefore, any statements made to bank employees with respect to that money transfer were also made within the scope of his employment. Accordingly, the Court finds that such statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D), and denies plaintiff's motion to strike on that basis.

### 3. E-mail from Larry Henshaw

Plaintiff next moves to strike an e-mail from Larry Henshaw, an employee of Smith Barney, to his manager, James Barnyak, which contains instructions allegedly coming from Dr. Cheung about the purchase of some stock. (Dkt. #67 at 7). Plaintiff argues that the e-mail message itself is hearsay, and that the statement pertaining to Mr. Cheung's instructions is also hearsay.

As an initial matter, the Court notes that the e-mail itself is not hearsay on the basis that there appears to be no question that the e-mail message is authentic. However, the content of the e-mail is problematic. Defendant introduces the e-mail, discussing a conversation wherein Mr. Henshaw allegedly received instruction from Dr. Cheung to buy certain stocks, to prove that Dr. Cheung actually controlled the Smith Barney account. The Court agrees with plaintiff that the statement constitutes inadmissible hearsay, and is not persuaded by defendant that Dr. Cheung's statements are excluded as party admissions. Accordingly, the Court will not consider Mr. Henshaw's e-mail on this motion for summary judgment.

### 4. Letter to AUSA Freeman

Finally, plaintiff asks this Court to strike a letter written by Dr. Cheung to Assistant U.S. Attorney Janet Freeman as hearsay. Defendant argues in conclusory fashion that the letter is admissible because the declarant is unavailable to testify. While the Court agrees that it appears Dr. Cheung will ultimately be unavailable to testify at any trial or hearing in this action, it is not enough for defendant to state, without any support, that Dr. Cheung is unavailable to testify and beyond procurement by process or other reasonable means. At the very least, defendant must produce evidence specifically demonstrating that its efforts to procure Dr. Cheung's testimony have failed,

and therefore, he is unavailable. Until defendant does so, this Court finds that Dr. Cheung's letter to AUSA Freeman is inadmissible hearsay. Accordingly, the Court will not consider the letter on this motion for summary judgment

**C. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**D. Levies on Nominee Accounts**

In order to prevail in a wrongful levy action under 26 U.S.C. § 7426, a plaintiff must demonstrate (1) that it has an interest in the property at issue, and (2) that the levy was wrongful, i.e., that the property was not the taxpayer's. *Flores v. United States*, 551 F.2d 1169, 1171 (1977). "The first of these requirements ensures standing; the second focuses on the condition precedent to government seizure, a nexus between the taxpayer and the property." *Id.*

The parties in this action do not dispute that plaintiff has standing to bring this case, and therefore, has satisfied the first element under § 7426. Thus, the only questions this Court must address are whether defendant has demonstrated that, as a matter of law, there exists a sufficient nexus between the taxpayer and the accounts levied upon by the IRS, and, if so, whether the levies were wrongful.

*1. Evidence to Be Considered by the Court*

At the outset, the Court addresses plaintiff's contention that defendant may only rely on the evidence it considered at the time the levy was issued in defending this wrongful levy action. That contention is clearly contrary to the standards governing cases in the Ninth Circuit, and will not be adopted by this Court.

In *Flores*, *supra*, the Ninth Circuit Court of Appeals explained that proceedings under § 7426 require the government to demonstrate a nexus between the property levied upon and the taxpayer. The court noted that, in such actions, both the plaintiff and the government seek a remedy from the court. Specifically, the government is not simply seeking to validate that its initial seizure was reasonable; rather, "it is asking the court to uphold its seizure, now matured into a taking." *Flores*, 551 F.2d at 1174. The court explained:

> We start by observing that just as police need probable cause to believe that evidence sought is to be found in the area to be searched and that such evidence relates to a crime, so, too, the Internal Revenue Service needs probable cause at the time assets are initially seized to connect those assets to a taxpayer with outstanding taxes due. *At the time of proceedings under § 7426 which will either sustain or void that seizure, it is equally necessary that the Revenue Service show*

> *that a nexus exists between the taxpayer and the property, or the permanent deprivation that has resulted from the seizure would be arbitrary and as a result offensive to the requirements of due process of law.*

*Flores*, 551 F.2d at 1175 (emphasis added). By this language, the Court finds that the Court of Appeals specifically contemplated that new and more developed evidence would be presented at the time of proceedings by the government in an attempt to demonstrate a nexus between the levied property and the taxpayer.

Although it ultimately addressed a different question, namely, what burden of proof the government must satisfy in demonstrating a nexus between the levied property and the taxpayer, at least one other court in this Circuit has concluded the same. In *Morgan Overseas Bank, Ltd. v. United States*, 1986 U.S. Dist. LEXIS 24164 (D. Ore. 1986) the district court noted:

> The government's burden of establishing a basis for its summary seizure will vary, depending on the type of relief sought and *the timing of the judicial inquiry*.
>
> A government showing of probable cause, familiar in other Fourth Amendment settings, can rebuff immediate challenges to the propriety of a levy. *However, stronger support from the IRS is needed where, as here, the basis for government action is explored in depth during discovery, and the trial court is rendering its final judgment.*
>
> Considerations of fairness impel us to conclude that once the factual record has been fully developed over time, and the seizure of property threatens to become permanent, the government must establish its asserted nexus between taxpayer and a third party by substantial evidence.
>
> This action was tried after complete discovery by the parties. Overseas is not seeking mere preliminary relief. Thus it would be inappropriate for the government to prove only that it had probable cause for the seizure. Substantial evidence of a nexus is required.

*Morgan Overseas Bank*, 1986 U.S. Dist. LEXIS 24164 at *6-7 (citation omitted) (emphasis added). Accordingly, this Court declines to adopt the standard set forth in *Oxford Capital Corp. v. United States*, 211 F.3d 280, 285 (5th Cir. 2000), upon which plaintiff relies, and will consider all of the evidence developed since defendant levied plaintiff's accounts, and which is properly before this

ORDER
PAGE - 7

Court.[2]

### 2. Nominee Status

There is no question that the IRS may levy property of a third party to satisfy the tax deficiencies of a taxpayer if it can prove that the third party is the nominee or alter ego of the taxpayer. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977). The nominee and alter ego theories are separate and distinct from each other. In the instant case, it is clear from the record that defendant levied upon plaintiff's accounts on the theory that it was the nominee of the taxpayer. Accordingly, the Court will employ an analysis based only the nominee theory, and agrees with plaintiff that the alter ego theory is not at issue in this case.

The Government has the burden of proving by a preponderance of the evidence its nominee claims. *United States v. Reed*, 168 F. Supp. 2d 1266, 1268 (D. Ut. 2001); *United States v. Marsh*, 114 F. Supp.2d 1036, 1045 (D. Hi. 2000). "Nominee status is determined by the degree to which a party exercises control over an entity and its assets." *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 729 (11th Cir. 1989), *cert. denied*, 494 U.S. 1027 (1990) ; *LiButti v. United States*, 107 F.3d 110, 119 (2nd Cir. 1997). There appear to be no reported Washington decisions applying a nominee theory of liability or addressing which factors are relevant in determining whether a business entity is the nominee of an individual. However, as the district court noted in *Towe Antique Ford Found. v. IRS, et, al.*, 791 F. Supp. 1450 (D. Mont. 1992), *aff'd*, 999 F.2d 1387 (9th Cir. 1993), other courts have found the following factors pertinent to that analysis, including:

(a)  No consideration or inadequate consideration paid by the nominee;

(b)  Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

(c)  Close relationship between transferor and the nominee;

---

[2] The Court recognizes that, unlike *Morgan Overseas Bank*, the parties here agree that defendant must prove a nexus between the taxpayer and the levied property by a preponderance of the evidence.

ORDER
PAGE - 8

1  (d) Failure to record conveyance;

2  (e) Retention of possession by the transferor; and

3  (f) Continued enjoyment by the transferor of benefits of the transferred property.

*Towe Antique Ford*, at 1454 (citations omitted). The district courts in this Circuit continuously apply these factors in wrongful tax levy cases, and so will this Court. *See, e.g., Sequoia Prop. & Equip. Ltd. P'ship v. United States*, 2002 U.S. Dist. LEXIS 20043, at *33 (E.D. Cal. 2002); *Michaels v. United States*, 2001 U.S. Dist. LEXIS 8090, at *13 (E.D. Wash. 2001); *Colby B. Found. v. United States*, 1997 U.S. Dist. LEXIS 17698, at *56-57 (D. Ore. 1997).

### a. Consideration

Dr. Cheung initially owned all of the 100 shares issued by plaintiff corporation. In 1994, he transferred 49 of his shares, in equal portions, to his wife, son and daughter for consideration in the amount of $10 per share. In 1995, he transferred another 49 shares of stock, also in equal portions, to his wife, son and daughter for consideration in the amount of $10 per share. He continues to retain two shares of stock.

Defendant asserts in conclusory fashion that the amount of consideration was inadequate, but produces no evidence of that contention. Similarly, plaintiff asserts in conclusory fashion that valuable consideration was paid for the stock shares. Based on the lack of evidence presented by either party as to what value the shares may have held at the time of transfer, the Court can come to no conclusion as to whether such consideration was adequate, and finds that this remains a question of material fact for the factfinder at trial.

### b. Property Placed In Name of Nominee

Defendant next asserts that Dr. Cheung transferred 98% of his stock at a time when he anticipated incurring tax liabilities for the 1993 tax year. Defendant notes that the Share Purchase and Sale Agreements state no reason for the stock transfer, and asserts that Dr. Cheung's children believed the transfer was a gift. However, defendant has presented no evidence that Dr. Cheung

transferred his ownership in plaintiff to avoid the 1993 tax collection.

Furthermore, plaintiff has presented evidence that at least at the time of transfer in 1995, Dr. Cheung was under the impression that any tax deficiencies previously assessed were no longer outstanding. In support, plaintiff points to a letter issued by the IRS on December 19, 1994, stating that there was no longer any deficiency or overassessment. Plaintiff also notes that the tax investigation with respect to the 1993 deficiency did not begin until the late 1990s, well after Dr. Cheung transferred his shares. Defendant has not rebutted that evidence. Accordingly, the Court finds defendant has failed to demonstrate that Dr. Cheung transferred his ownership in plaintiff to avoid his 1993 tax liability.

### c. Relationship Between Transferor and Nominee

Under this factor, the Court considers the relationship between Dr. Cheung and the transferees who received his stock shares, as well as any other relationship that Dr. Cheung continues to maintain with plaintiff. First, the Court considers the fact that Dr. Cheung transferred his shares to his family members, including his wife, to whom he remains married. These family members all maintain positions as corporate officers on the Board of Directors of plaintiff corporation. However, there is no conclusive evidence that Dr. Cheung influences the decisions of those shareholders. To the contrary, plaintiff has produced declarations from all of the officers that they take direction only from Mrs. Cheung.

Defendant points to Mr. Circo's attempted wiring of $350,00 to Imperial West in Hong Kong as evidence that Dr. Cheung actually controlled plaintiff's assets. It also presents evidence that Mr. Circo told bank employees that Dr. Cheung would be the ultimate beneficiary of the funds, and that the bank itself believed Dr. Cheung was the owner of the account. Plaintiff, on the other hand, presents evidence that Mr. Circo made no such statements to bank employees and that the wire transfer was intended as a payment on a loan, and therefore, Dr. Cheung was not the beneficiary. In addition, plaintiff demonstrates that Dr. Cheung is not a signatory on the bank

account.  Furthermore, with respect to the Smith Barney accounts, defendant provides no evidence that Dr. Cheung controlled the investment accounts, other than the content of Mr. Henshaw's e-mail, referenced above, which this Court has declined to consider on summary judgment.

Accordingly, the Court finds that material questions of fact have been raised with respect to the relationship between Dr. Cheung and plaintiff, and will leave those questions to the factfinder to resolve at trial.

### d.  Failure to Record Conveyance

Defendant notes that plaintiff failed to record the conveyance of stock shares in the minutes from the 1995 and 1996 Annual Meetings.  However, defendant does not dispute that Dr. Cheung and the transferees had signed valid Share Purchase and Sale Agreements governing the transfers.  Accordingly, the Court finds that defendant has failed to demonstrate a failure to record the conveyance of the property.

### e.  Retention of Possession by the Transferor

There is no dispute that Dr. Cheung retains two shares in plaintiff corporation.  However, this factor alone is not dispositive of whether Dr. Cheung retained control of plaintiff and its property.

### f.  Continued Enjoyment

Defendant argues that Dr. Cheung continued to enjoy the benefits of plaintiff after he transferred his shares.  For example, defendant points to plaintiff's employees taking care of the Cheungs' Lake Washington house, Dr. Cheung's use of the Yokeko house and a Sea Ray, Dr. and Mrs. Cheung's use of a Mercedes E420 owned by plaintiff, a tax-free distribution of $6,000 to Dr. Cheung from plaintiff, and plaintiff's payment of the Cheungs' criminal attorney's fees.  Defendant also notes that plaintiff made a $100,000 contribution to a fund at the University of Chicago in memory of Aaron Director, who had been a mentor of Dr. Cheung's and who had no other connection to the business of plaintiff.  Plaintiff does not rebut this evidence.  However, the Court

1  does not find this factor dispositive of whether Dr. Cheung retained control of plaintiff and its
2  property.
3      Having considered all of these factors, and having thoroughly reviewed defendant's and
4  plaintiff's motions for summary judgment, the responses and replies thereto, the declarations and
5  evidence in support of the motions, and the remainder of the record, the Court finds that summary
6  judgment is not appropriate for either party, as genuine issues of material fact have been raised with
7  respect to whether there is a nexus between plaintiff and the taxpayer.
8      For that reason, it is not necessary for the Court to reach the question of whether the levies
9  were wrongful.

### III. CONCLUSION

Accordingly, the Court hereby ORDERS:

(1) Defendant's Motion for Partial Summary Judgment (Dkt. #52) is DENIED..

(2) Plaintiff's Motion for Summary Judgment (Dkt. #54) is DENIED.

(3) The Clerk shall send a copy of this Order to all counsel of record.

DATED this _28_ day of August, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 12