1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

STEVEN N.S. CHEUNG, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

CASE NO. C04-2050RSM

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION FOR ATTORNEY FEES
AND COSTS

17

### I.  INTRODUCTION

18

19

20

21

22

23

24

25

26

This matter comes before the Court on plaintiff's Motion to Determine Attorney Fees
and Costs.  (Dkt. #142).  Plaintiff asks the Court to grant it reasonable attorneys' fees and costs
pursuant to 26 U.S.C. § 7430, and for statutory damages pursuant to 26 U.S.C. § 7426(h).
Defendant opposes the motion, arguing that plaintiff is not entitled to attorney fees and costs
because its position during litigation was substantially justified, plaintiff has not met the net
worth requirements, plaintiff unreasonably protracted portions of the proceedings, and the
hourly rates requested by plaintiff exceed the statutory cap rates.  Defendant further argues that
plaintiff is not entitled to statutory damages because plaintiff did not exhaust its administrative
remedies and the damages plaintiff seeks are not allowable under the statute.  For the reasons set

ORDER
PAGE - 1

forth below, the Court agrees in part with defendant and GRANTS IN PART and DENIES IS

PART plaintiff's motion for fees and costs.

## II.  DISCUSSION

### A.  Background

The Court had set forth the background of this action in numerous previous Orders.

Therefore, the Court will not recount it here.  Facts specific to the Court's analysis will be

discussed in context below.

### B.  Attorney Fees and Costs Under 26 U.S.C. § 7430

Under 26 U.S.C. § 7430, the prevailing party "[i]n any administrative or court

proceeding which is brought by or against the United States in connection with the

determination, collection, or refund of any tax, interest, or penalty under this title," is entitled to

reasonable litigation costs, including attorney's fees, in connection with such proceedings.  26

U.S.C. § 7430(a)(2) and (c)(1)(B)(iii).[1]  A prevailing party is defined by the statute as one who

has substantially prevailed with respect to the amount in controversy or the most significant

issues presented, and who has met certain net worth requirements.  26 U.S.C. § 7430(c)(4)(A).

An exception to the rule exists if defendant establishes that its position was substantially

justified.  26 U.S.C. § 7430(c)(4)(B)(i).  Further, the prevailing party must have exhausted its

administrative remedies and must not have unreasonably protracted the proceedings.  26 U.S.C.

§ 7430(b)(1) and (b)(3).  *See also In re Yochum*, 89 F.3d 661, 670 (9th Cir. 1996); *JJR, Inc. v.*

*United States*, 36 F. Supp.2d 1259, 1260 (W.D. Wash. 1999).

Defendant agrees that, in this case, plaintiff has substantially prevailed with respect to the

amount in controversy or the most significant issue or set of issues provided.  (Dkt. #155 at 4).

Defendant also agrees that plaintiff has exhausted its administrative remedies with respect to the

---

[1] The prevailing party may also be awarded reasonable administrative costs incurred in connection
with an administrative proceeding within the Internal Revenue Service.  26 U.S.C. §7430 (a)(1).

ORDER
PAGE - 2

levies on the Bank of America account and the Smith Barney investment account. However, defendant does not agree that plaintiff has exhausted its administrative remedies with respect to the payoff check it tendered after the levies on the accounts. (Dkt. #155 at 10). Defendant also argues that plaintiff does not satisfy the applicable net worth requirements, plaintiff unreasonably protracted certain portions of the proceedings, and, finally, that defendant was substantially justified in its litigation position. The Court addresses each argument in turn.

### 1. Exhaustion of Administrative Remedies

Defendant argues that plaintiff did not exhaust its administrative remedies with respect to the check for $373,013 which was paid to defendant after defendant levied plaintiff's accounts. Defendant asserts that plaintiff should have followed the procedure under 26 U.S.C. § 6325(b)(4) by requesting a certificate of discharge of real property from the operation of a lien thereon. (Dkt. #155 at 10-11). The Court is not persuaded.

On October 31, 2003, plaintiff filed an administrative request asking for the return of all funds that were wrongfully levied or liened. This Court has previously determined that the check at issue was wrongfully levied. Accordingly, the Court finds that plaintiff fully exhausted its administrative remedies with respect to all funds at issue in this action.

### 2. Net Worth Requirements

Under 26 U.S.C. § 7430(c)(4)(D), which cross-references the requirements set forth in the Equal Access to Justice Act ("EAJA"), plaintiff must demonstrate that its net worth did not exceed $7,000,000 at the time the action was filed, and that it did not have more than 500 employees at the time the action was filed. Defendant does not dispute that plaintiff did not employ more than 500 people at the time this action was filed. However, defendant argues that plaintiff has not demonstrated net worth under generally accepted accounting principles, and therefore, attorney fees must be denied. Again, the Court is not persuaded.

Plaintiff's accountant has prepared a financial statement in accordance with

ORDER
PAGE - 3

comprehensive basis of accounting ("OCBOA") standards, and has declared in a sworn statement that the net worth of plaintiff at the time of filing was negative $193,153. (Dkt. #161). While defendant complains that such financial statement was not prepared using generally accepted accounting principles ("GAAP"), plaintiff's accountant explains that the GAAP method is not appropriate for cash-basis tax payers such as plaintiff, and that both methods of accounting are recognized as valid accounting methods by the American Institute of Certified Public Accountants ("AICPA"). Further, plaintiff's accountant explains that it has correctly reflected plaintiff's subsidiaries under investments as required by AICPA accounting methods. Finally, the Court is not persuaded that plaintiff's accountant's boiler plate disclaimer language casts any doubt as to the validity of its financial statement.

For these reasons, the Court finds that plaintiff has met the net worth requirements.

### 3. Protraction of Litigation

Defendant next argues that plaintiff unreasonably protected litigation both at the administrative level and in this action. Defendant argues that, at the administrative level, plaintiff improperly attempted to challenge the merits of the tax assessment even though it knew such challenge was improper. Defendant further argues that, in this action, plaintiff unreasonably protracted the judicial proceedings by filing what appeared to be a challenge to the merits of the tax liability, by attempting to recover the proceeds of Dr. Cheung's individual retirement account, by attempting to withhold production of corporate records as confidential under Rule 26(c)(7), by noting depositions of several IRS personnel, and by attempting to preclude AUSA Janet Freeman from testifying based on the witness/advocate rule.

With respect to the administrative proceedings, the Court in not persuaded that plaintiff unreasonably protracted those proceedings. While defendant complains that plaintiff's counsel improperly attempted to challenge the merits of the tax assessment and then unreasonably filed protest letters and requests for technical advice instead of simply proceeding to litigation in this

Court, plaintiff's counsel explains that he was simply attempting to avoid a lengthy and costly litigation in this Court.  The Court agrees with plaintiff that such motivation does not constitute unreasonable protraction.  *See, e.g.*, *In re Southwest Stores, Inc.*, 156 B.R. 160, 167 (E.D. Va. 1993) (explaining that the statute requires a good faith effort to resolve the dispute with the IRS before litigating).

Likewise, with respect to the instant proceedings, the Court finds that plaintiff did not unreasonably protract litigation.  The actions of which defendant complains are typical actions taken within the normal course of litigation.  None of the actions occurred outside the pre-trial deadlines set by this Court, nor do they appear to have delayed litigation in any other manner. *See Nordvik v. Commissioner*, 67 F.3d 1489, 1494 (9th Cir. 1995) (holding that plaintiffs had unreasonably protracted litigation when their actions caused lengthier proceedings and resulted in untimely motions).  Furthermore, defendant provides no authority in support of its position.

For all of these reasons, the Court finds that plaintiff did not unreasonably protract either the administrative proceedings or the instant litigation.

### 4.  *Substantial Justification*

Finally, defendant argues that its position during litigation was substantially justified, and therefore plaintiff may not recover fees and costs.  The Supreme Court has defined "substantially justified" as follows:

> We are of the view, therefore, that as between the two commonly used connotations of the word 'substantially,' the one most naturally conveyed by the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main' - - that is, justified to a degree that could satisfy a reasonable person.  That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.  To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

*Pierce v. Underwood*, 487 U.S. 552, 565-66 and n.2  (1988) (citations omitted); *see also Kenney v. United States*, 458 F.3d 1025, 1032 (9th Cir. 2006); *In re Yochum*, 89 F.3d at 670-

ORDER
PAGE - 5

71. Plaintiff argues that defendant's position in these proceedings did not have a reasonable basis in law or fact.

It is defendant's burden to prove that its position was substantially justified. 26 U.S.C. § 7430(c)(4)(B)(i); *Estate v. Baird v. C.I.R.*, 416 F.3d 442, 446 (5th Cir. 2005). Here, defendant asks the Court to look at the totality of its circumstantial evidence in light of the applicable law and find that a reasonable person could have been satisfied that there was a nexus between Dr. Cheung and the levied property, and, therefore, defendant's litigation position was substantially justified. However, even looking at the totality of the circumstances, the Court now finds that defendant's position was not substantially justified.

There is no dispute that defendant has always pursued its levy on the nominee theory. As this Court has previously explained, "'[n]ominee status is determined by the degree to which a party exercises control over an entity and its assets.'" (Dkt. #87 at 8) (quoting *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 729 (11th Cir. 1989), *cert. denied*, 494 U.S. 1027 (1990). The Court ultimately concluded at trial:

> I guess it is understandable to this Court that the Government would look at circumstantial evidence and believe that Dr. Cheung was in fact the nominee – that the corporation was his alter ego or the nominee of the taxpayer. *But had they done any further work, had they looked at [what] truly was occurring here, I think they would have realized there was no way they could actually show that.*

(Dkt. #170, Ex. C at 157) (emphasis added).

Prior to trial, the Court examined the factors set forth in *Towe Antique Ford*, *supra*, in the context of summary judgment. Although the Court ultimately concluded that there were questions of fact precluding judgment in favor of either party, the Court noted that defendant had produced no evidence of inadequate consideration paid for the shares of stock, no evidence that Dr. Cheung transferred his stock ownership to avoid the 1993 tax collection, and minimal evidence with respect to the other factors. (Dkt. 87 at 8-12). Defendant was unable to produce anything further at trial. Indeed, at trial, one of defendant's key witnesses, Amy Albee from

ORDER
PAGE - 6

Bank of America, explicitly contradicted defendant's previous assertion that she was suspicious of a wire transfer and believed it to be going directly to Dr. Cheung. She instead stated that she needed approval of the transfer because the account contained "uncollected funds," and she was not aware of the business change form that added Art Circo as a signatory on the account. (Dkt. #170, Ex. C at 145-46). She further stated that she would have felt more comfortable with the transfer if she had known of the form. (Dkt. #170, Ex. C at 146).

Further complicating defendant's position was the fact that its own agents were apparently confused about the difference between nominee and alter ego theories. In fact, agent Molly Mahoney testified that it didn't matter to her what theory was being asserted to levy the funds, she just wanted to keep the money in the country. (Dkt. #170, Ex. C at 136-37). Agent Mike Kolpack testified that he initially had a lot of misinformation about who controlled plaintiff, and could really point to no specific evidence of Dr. Cheung's involvement in any manner. (Dkt. #170, Ex. C at 138-41).

The Court noted that defendant has always known that the burden is on it to prove a nexus between the taxpayer and the properties levied and seized, and that it must demonstrate that the taxpayer has a beneficial ownership of the property, but found that defendant focused only on the wire transfer. (Dkt. #170, Ex. C at 154-55). The Court then reminded defendant that what it believed was in evidence was very different from what was actually in evidence. (Dkt. #10, Ex. C at 155). Finally, the Court noted that "[a]t all points in time" defendant had acted based on an unsupported assumption that Dr. Cheung controlled plaintiff. (Dkt. #170, Ex. C at 156).

Defendant asks the Court to consider the circumstantial evidence that was excluded at trial. However, defendant fails to acknowledge that the Court alerted defendant that it already considered much of that evidence problematic. For example, the Court noted on summary judgment that the Imperial West Bank signature card would not be admissible because defendant

ORDER
PAGE - 7

failed to obtain permission from Hong Kong authorities to use it, the e-mail from Larry Henshaw constituted inadmissible hearsay, and the letters to AUSA Janet Freeman were not admissible unless defendant could show that Dr. Cheung was unavailable, which it could not. (Dkt. #87 at 3-5). Defendant was unable to overcome those deficiencies at trial and the evidence remained inadmissible. Without that evidence, there was little, if anything, to connect Dr. Cheung to the accounts in question.

Finally, with respect to the check for $373,013.00, the Court ruled as a matter of law that it was not a voluntary payment. (Dkt. #66). It confirmed that ruling on defendant's motion for reconsideration. (Dkt. #96). Yet defendant continued to make the argument at trial that the payment was voluntary. (*See* Dkt. #170, Ex. C at 156).

Had defendant carefully considered its position in light of the evidence it possessed and the prior rulings of this Court, it should have realized that its position was not substantially justified. Defendant has failed to persuade the Court to the contrary. Accordingly, the Court finds that defendant's litigation position did not have a reasonable basis in fact or law, and therefore was not substantially justified. As a result, plaintiff has met the definition of a prevailing party and is entitled to its litigation costs.

### 5. *Hourly Rates and Time*

Defendant argues that even if plaintiff is allowed to recover litigation costs, those costs should be capped at the statutory rate of $160 per hour.[2] Under 26 U.S.C. § 7430(c), attorney fees shall be awarded at the statutory rate "unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate." 26 U.S.C. § 7430(c)(1)(B)(iii). Defendant asserts that no special factors exist in this case. Although there

---

[2] Section 7430(c)(i)(B)(iii) actually provides that attorney's fees shall not exceed $125 per hour. However, as noted by defendant, adjustments for increases in cost of living set the hourly rates at $150 per hour for 2003, 2004 and 2005, and $160 per hour for 2006. (Dkt. #155 at 13).

ORDER
PAGE - 8

is no question as to counsels' competence and expertise, the Court agrees with defendant for the reasons explained below.

Federal courts have consistently noted that tax expertise itself is not a special factor requiring an upward departure from the statutory rate. *See, e.g.*, *Huffman v. CIR*, 978 F.2d 1139, 1150 (9th Cir. 1992); *Cassuto v. CIR*, 936 F.2d 736, 743 (2d. Cir. 1991); *JJR, Inc. v. United States*, 36 F. Supp.2d 1259, 1263 (W.D. Wash. 1999); *United States v. Guess*, 425 F. Supp.2d 1143, 1151 (S. D. Cal. 2006). In *Pierce v. Underwood*, the U.S. Supreme Court found that the special factor formulation suggests that tax expertise is not "special." 487 U.S. at 572. This Court recognizes that section 7430 was amended to include the example "local availability of tax expertise," however, this does not change the Court's conclusion. Courts have construed that language to pertain specifically to mean "an actual shortage of qualified attorneys who could handle the case rather than an inability to retain qualified counsel willing to take on the representation at the statutory maximum hourly rate." *Guess*, 425 F. Supp.2d at 1155.[3]

Further, the Court is not persuaded that Mr. Lenci's background with the Department of Justice requires any statutory departure. While such experience was likely useful, the bulk of the issues presented in this action pertained solely to corporate tax issues, not criminal matters, and courts have found that complex civil litigation experience does not constitute a special factor. *Guess*, 425 F. Supp.2d at 1153. Accordingly, the Court will cap all eligible attorney fees at $150.00 per hour for worked performed in 2003, 2004 and 2005, and $160.00 per hour for worked performed in 2006.

With respect to defendant's arguments that certain billing statements lack sufficient detail, the Court finds that Mr. Shannahan's billing statements are sufficient. Similarly, the

---

[3] On this basis the Court is also not persuaded by plaintiff's argument that it could not find attorneys in this area to take its case at the statutory rate. Here, there is nothing in the record demonstrating that there is shortage of local qualified counsel to handle a matter like this one; rather, plaintiff notes that such counsel would not accept the representation for compensation capped at $160.00 per hour. *See id.*

ORDER
PAGE - 9

Court does not find the work hours performed by counsel's paralegals to be unreasonable. Finally, the Court agrees with plaintiff that it may recover Navigant Consulting's expert fees under 26 U.S.C. § 7430(c)(1). Defendant has not demonstrated that those fees are unreasonable or that they should be subjected to the attorney fee cap.

However, the Court agrees with defendant that plaintiff is not entitled to the fees claimed by Mr. Shannahan as "expert witness" fees. He was never listed as an expert witness and never produced expert witness reports. Indeed, he withdrew as counsel shortly before trial when he recognized that he would be a fact witness in this action. Further, the Court agrees with defendant, for the reasons set forth in its response brief, that plaintiff should not be reimbursed for the fees incurred by Phillip L. Thom, who serves as plaintiff's general counsel, or the fees incurred by Allen Bentley for "CLE Registration, Representing Financial Interests."

**C. Damages Under 26 U.S.C. § 7426(h)**

Under 26 U.S.C. § 7426(h), if the Court finds:

> that any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of this title the defendant shall be liable to the plaintiff *in an amount equal to the lesser of* $ 1,000,000 ($ 100,000 in the case of negligence) or the sum of–
>
> (A) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent disregard of any provision of this title by the officer or employee (reduced by any amount of such damages awarded under subsection (b)); and
>
> (B) the costs of the action.

26 U.S.C. § 7426(h)(1) (emphasis added). Plaintiff argues that IRS officers acted recklessly or intentionally, or at least negligently, in this action, and therefore it is entitled to damages in excess of $1,000,000.

Section 7426(h) is subject to the requirements of 26 U.S.C. § 7433(d). 26 U.S.C. § 7426(h)(2). That section states that "[a] judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available

ORDER
PAGE - 10

1   to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1).  The statute also

2   requires that plaintiff mitigate its damages.  26 U.S.C. § 7433(d)(2).  Defendant argues that

3   plaintiff has failed to exhaust its administrative remedies, and therefore plaintiff's request should

4   be denied.  Specifically, defendant argues that plaintiff must submit a claim for damages to the

5   IRS prior to filing a petition for damages with this Court.  The Court is not persuaded.

6          The Court recognizes that the requirement that administrative remedies be exhausted

7   prior to filing suit is a prerequisite to the United States' waiver of sovereign immunity under

8   these sections and, absent exhaustion, a claim for damages against the United States must be

9   dismissed for lack of subject matter jurisdiction.  *See Conforte v. United States*, 979 F.2d 1375,

10  1376 (9th Cir. 1993); *see also Carter v. United States*, 216 F. Supp.2d 700, 711-12 (W.D.

11  Tenn. 2002) (finding that plaintiff was entitled to funds wrongfully levied, but not entitled to

12  damages because she had failed to exhaust her administrative remedies by filing a claim with the

13  IRS).  In this case, plaintiff has met that requirement.  There is no dispute that plaintiff pursued

14  an administrative claim seeking the return of funds wrongfully levied, and, as discussed above,

15  the Court has found that such claim applied to all of the funds at issue in this action.

16         Further, requiring plaintiff to file an administrative claim for damages prior to litigation in

17  nonsensical in this context.  Indeed, section 7426(h) requires a finding by this Court that an

18  officer or employee of the IRS recklessly, intentionally or negligently disregarded a section of

19  the tax code before plaintiff may even seek damages under that section.  Until such a finding is

20  made, there would be no basis to submit a damages claim to the IRS.  In addition, requiring

21  plaintiff to file a claim after the Court makes such a finding would result in an unwieldy and

22  inefficient process where, as plaintiff demonstrates in its Reply brief, the Court would likely end

23  up determining what damages were due in any event.  (*See* Dkt. #159 at 10-11).  Thus, the

24  Court finds that plaintiff has exhausted the available administrative procedures.

25         Likewise, the Court is not persuaded that plaintiff has failed to mitigate its damages.  In

26

ORDER
PAGE - 11

one conclusory sentence, defendant asserts that plaintiff has not demonstrated mitigation. However, defendant fails to point any damages that could have been mitigated, nor does it provide any authority in support of its argument. On the other hand, plaintiff notes that it made every effort to avoid litigation in this case, and only incurred certain expenses, such as selling property to pay for the attorney fees, once litigation became necessary. Accordingly, the Court turns to the question of whether any officer or employee recklessly, intentionally or negligently disregarded and section of the code in this action.

Plaintiff asserts that IRS officials recklessly and intentionally, or at least negligently, disregarded 26 U.S.C. § 6343(b). That section requires defendant to return wrongfully levied upon property. As discussed above, the Court found at trial that the IRS agents investigating and implementing the jeopardy levies in this case, had acted based on an unsupported assumption that Dr. Cheung controlled plaintiff. (Dkt. #170, Ex. C at 156). The Court further concluded that had the agents "done any further work, had they looked at [what] truly was occurring here, I think they would have realized there was no way they could actually show [nominee status]." (Dkt. #170, Ex. C at 157). The letter rejecting plaintiff's administrative claim demonstrates that no further investigation was made by IRS officials; instead, they simply relied on the hurried investigation that had already taken place. (Dkt. #143, Ex. E).

On the other hand, the Court recognizes that "[j]eopardy assessments are implemented where the assessment or collection of tax is determined to be in jeopardy. Under such circumstances, the IRS is authorized to make an immediate assessment without following the procedures required for an ordinary assessment, and then may proceed to collect the tax as assessed without delay." *Miller v. United States*, 66 F.3d 220, 222 (9th Cir. 1995). There is evidence in the record that IRS agents Mahoney and Kolpack had information linking Dr. Cheung to plaintiff that they believed to be true and accurate, and acted accordingly. Therefore, the Court finds that those agents acted negligently in conducting their investigation, rather than

ORDER
PAGE - 12

recklessly or intentionally.  However, the Court also finds that plaintiff has failed to identify what section of the code the agents disregarded.  Indeed, it appears that plaintiff focuses on the officials in charge of the administrative review, as evidenced by its argument that such officials failed to conduct a thorough investigation to determine whether they could keep the property once it was levied.  (*See* Dkt. #159 at 12).

Further, with respect to the actions taken by the IRS in reviewing plaintiff's administrative claim, there is nothing in the record indicating whether such action was reckless, intentional or negligent, and the Court made no specific findings with respect to that question. While Mr. Shannahan testified about his typical interactions with the IRS, the Court has already noted that such testimony was not accepted as expert witness testimony.  Therefore, the Court has no basis to make any finding that IRS officials acted in a wrongful manner in reviewing plaintiff's administrative claim.

Because the Court has determined that Agents Mahoney and Kolpack acted negligently in their investigation, but also found that plaintiff failed to identify any section of the tax code they disregarded, and because there has been no factual finding with respect to the conduct of the IRS officials, the Court now finds that plaintiff has not demonstrated any actual, direct economic damage sustained as a result of the agents' disregard for a section of the tax code.  On the same basis, plaintiff may not recover any additional costs.

### III. CONCLUSION

Having reviewed plaintiff's motion for attorney's fees and costs, defendant's response, plaintiff's reply, and the remainder of the record, the Court hereby ORDERS:

(1)  Plaintiff's Motion for Attorney's Fees (Dkt. #142) is GRANTED IN PART. Plaintiff is hereby DIRECTED to file an Amended Petition for Fees and Costs, including attorney fees calculated at the statutory rate of $150.00 per hour for worked performed in 2003, 2004 and 2005, and $160.00 per hour for worked performed in 2006, and excluding any of the

ORDER
PAGE - 13

1  fees and costs denied above.  The Amended Petition shall be noted for seven days (7) after the

2  date it is filed.  As part of that Amended Petition, the Court <u>will not accept</u> any further briefing

3  on any of the issues already determined in this Order, nor will the Court accept any new

4  arguments.

5      (2)  Defendant may file a response <u>only to note</u> any fees or costs it believes have been

6  erroneously included based on this Order.  As part of that response, the Court <u>will not accept</u>

7  any further briefing on any of the issues already determined in this Order, nor will the Court

8  accept any new arguments.

9      (3)  The Clerk shall send a copy of this Order to all counsel of record.

10      DATED this 17th day of January, 2007.

11

12      RICARDO S. MARTINEZ
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 14